# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>ZTE cellphone;  LG cellphone; Decwin mini cellphone; Zanco mini phone; Huawei smart phone; white Posh phone; black Posh phone Model S240B with IMEI 353046070006271; Flip phone Model Z222 with IMEI 866011024015588; Posh phone IMEI 354556070012854,354556070317857 | Case No.  2:23-sw-0606 CKD |

**FILED**
Jun 16, 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846, and 843(b); 18 U.S.C. §§ 1962(d) and 1959(a) | Distribution and Possession with Intent to Distribute Controlled Substances; Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; Use of a Communication Facility to Facilitate a Controlled Substance Offense; Conspiracy to Engage in a Racketeer Influenced Corrupt Organization; Violent Crimes in Aid of Racketeering |

The application is based on these facts:  **SEE AFFIDAVIT, attached hereto and incorporated by**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's  signature*

Brian Nehring, DEA Special Agent
*Printed name and title*

Sworn to before me and signed telephonically.
Date:  ___June 16, 2023 at 9:37 am___

*Judge's signature*

City and state:  Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

1  PHILLIP A. TALBERT
   United States Attorney
2  ROSS PEARSON
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile:  (916) 554-2900
5
6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 In the Matter of the Search of:          CASE NO.

12   a) ZTE cellphone                        AFFIDAVIT IN SUPPORT OF AN APPLICATION
      b) LG cellphone                        UNDER RULE 41 FOR A WARRANT TO
13    c) Decwin mini cellphone               SEARCH DEVICES
      d) Zanco mini phone
14    e) Huawei smart phone
      f) white Posh phone
15    g) black Posh phone Model S240B with
         IMEI 353046070006271
16    h) Flip phone Model Z222 with IMEI
         866011024015588
17    i) Posh phone IMEI
         354556070012854,354556070317857
18

19

20       I, Brian Nehring, hereby depose and state as follows:

21                I.    **INTRODUCTION AND AGENT BACKGROUND**

22       1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of

23 Criminal Procedure for a search warrant authorizing the examination of the described cellular telephones

24 **(the Subject Devices)**, serial number unknown, described more fully in Attachment A.

25       2.    The **Subject Devices** are in the custody of the California State Prison – Sacramento in

26 Folsom, California.  There is probable cause to believe that the electronically stored information, as

27 described in Attachment B, will be located on the **Subject Devices**, and is evidence, fruits, and

28

1  instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (Distribution and Possession with Intent to

2  Distribute Controlled Substances), 846 (Conspiracy to Distribute and Possess with Intent to Distribute

3  Controlled Substances), and 843(b) (Use of a Communication Facility to Facilitate a Controlled

4  Substance Offense); and 18 U.S.C. §§ 1962(d) (Conspiracy to Engage in a Racketeer Influenced Corrupt

5  Organization), and 1959(a) (Violent Crimes in Aid of Racketeering).

6       3.      This affidavit is submitted for the limited purpose of securing a search warrant.  I have

7  not included every fact known to me concerning this investigation.  Instead, I have set forth only the

8  facts necessary to establish probable cause that violations of the federal laws identified above have

9  occurred, and that evidence, fruits, and instrumentalities of these violations are located at or on the

10  **Subject Devices**.  I have based my statements in this affidavit on my training and experience, personal

11  knowledge of the facts and circumstances obtained through my participation in this investigation,

12  information provided by the victim company, information provided by other agents and law enforcement

13  officers, and information provided by records and databases.

## II.    AGENT BACKGROUND

15       4.      I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco

16  Field Division, and have been so employed since 1991.  I have had numerous assignments since

17  beginning with DEA, including being assigned to the San Francisco Division Office between 1991 and

18  1994, the Alameda County Narcotics Task Force between 1995 and 1996, the San Francisco Division

19  Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office between

20  1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004.  I have been

21  assigned to the Sacramento Division Office since September of 2004 and I am still currently assigned to

22  this office as of 2016.

23       5.      I have received specialized training in narcotic investigation matters including, but not

24  limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug

25  identification, and asset identification and removal, from the Drug Enforcement Administration (DEA).

26  In addition, I graduated from the DEA Basic Agents Academy at the FBI Academy at Quantico,

27  Virginia in 1991.  In total, I have received in excess of 500 hours of comprehensive formalized

28

classroom instruction in those areas outlined above. I have assisted in the execution of more than four hundred (400) warrants to search particular places or premises for controlled substances and/or related paraphernalia, indicia and other evidence of violations of federal drug narcotics statutes. As a result, I have encountered and become familiar with various tools, methods, trends, and paraphernalia and related articles utilized by traffickers in their efforts to import, conceal, manufacture and distribute controlled substances.  Central to all trafficking efforts, regardless of the drug, is the traffickers' effort to make a profit from those dealings or transactions, either for the purchase of additional substances or material gain.  I have been actively involved as case agent in excess of two hundred (200) investigations and have talked with confidential informants involved in the trafficking of narcotics, and this has formed the basis of my opinions. I have been qualified as and have testified as an expert witness in both federal and state court in the Northern and Eastern Districts of California and in counties including Alameda, Contra Costa, Solano, Sacramento and others.  These areas of qualification have included possession for sale, possession with intent to distribute, manufacturing of a controlled substance and cultivation.   As a DEA agent, I am authorized to investigate violations of United States law and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.  Prior to my current position as a Special Agent with DEA I graduated from the California State University, Sacramento with a BA in Criminal Justice in 1990.

### III.   IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.      The following phones are to be searched:

a)      ZTE cellphone, located at the CALIFORNIA STATE PRISON – SACRAMENTO, located in Folsom, California.

b)      LG cellphone, located at the CALIFORNIA STATE PRISON – SACRAMENTO, located in Folsom, California.

c)      Decwin mini cellphone, located at the CALIFORNIA STATE PRISON – SACRAMENTO, located in Folsom, California.

d)      Zanco mini phone, located at the CALIFORNIA STATE PRISON – SACRAMENTO, located in Folsom, California.

e)      Huawei smart phone, located at the CALIFORNIA STATE PRISON – SACRAMENTO,

located in Folsom, California.

f)    white Posh phone, located at the CALIFORNIA STATE PRISON – SACRAMENTO, located in Folsom, California.

g)    black Posh phone Model S240B with IMEI 353046070006271, located at the CALIFORNIA STATE PRISON – SACRAMENTO, located in Folsom, California.

h)    Flip phone Model Z222 with IMEI 866011024015588, located at the CALIFORNIA STATE PRISON – SACRAMENTO, located in Folsom, California.

i)    Posh phone IMEI   354556070012854,354556070317857, located at the CALIFORNIA STATE PRISON – SACRAMENTO, located in Folsom, California.

j)    Posh phone IMEI Number 354556070012854,354556070317857, located at the DEA SACRAMENTO OFFICE, located in Sacramento, California.

Collectively these phones are referred to as the **Subject Devices**.

### IV.    PROBABLE CAUSE

7.    Between July 2016 and December 2016, the Drug Enforcement Administration conducted Title 3 Intercepts of phones connected to the Aryan Brotherhood prison gang. During this time numerous calls were intercepted involving the planning and coordination of narcotics transactions by members and associates of the Aryan Brotherhood. Many of the calls also discussed Aryan Brotherhood business including but limited to planning the assaults and/or murders of other individuals and the smuggling of contraband such as narcotics and cellphones into prisons. Aryan Brotherhood members Ronald YANDELL, William SYLVESTER and Daniel TROXELL were all intercepted as part the Title 3 intercepts.

8.    This request for a search warrant originates from an investigation into the Aryan Brotherhood criminal enterprise.  On May 21, 2019, I signed an affidavit in support of a criminal complaint charging sixteen defendants with violations of 18 U.S.C. § 1962(d) – Conspiracy to Engage in a Racketeer Influenced Corrupt Organization; 18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Murder (6 Counts); 21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Heroin (2 Counts); 21 U.S.C. § 841(a)(1) – Distribution of Heroin (3 Counts); and 21 U.S.C. § 841(a)(1) – Distribution of Methamphetamine. *See United States v. Yandell, et al.*,

1    Case No. 2:19-cr-107, ECF No. 1 (May 21, 2019) (authorized by Magistrate Judge Delaney).  I

2    incorporate that affidavit by reference into this application for a search warrant.

3        9.    I subsequently became aware that numerous cellular telephones had been seized from

4    YANDELL by the California Department of Corrections and Rehabilitation (CDCR) in recent years as

5    contraband telephones which no prisoner is allowed to possess. The following details the times, dates,

6    locations and types of phones seized per CDCR records I have reviewed.

7        10.    On January 3rd, 2019, the Investigative Service Unit at California State Prison-

8    Sacramento of the California Department of Corrections and Rehabilitation discovered a contraband

9    cellphone described as a **ZTE phone** in the assigned cell of inmate Ronald YANDELL.

10        11.    On May 27th, 2018, the Investigative Service Unit at California State Prison-Sacramento

11    of the California Department of Corrections and Rehabilitation discovered a contraband cellphone

12    described as a **LG phone** in the assigned cell of inmate Ronald YANDELL.

13        12.     On November 8th, 2017, the Investigative Service Unit at California State Prison-

14    Sacramento of the California Department of Corrections and Rehabilitation discovered a contraband

15    cellphone described as a **Decwin mini phone** in the assigned cell of inmates Ronald YANDELL and

16    William SYLVESTER.

17        13.    On July 19th, 2017, the Investigative Service Unit at California State Prison-Sacramento

18    of the California Department of Corrections and Rehabilitation discovered a contraband cellphone

19    described as a **Zanco mini phone** in the assigned cell of inmates Ronald YANDELL and William

20    SYLVESTER.

21        14.    On June 5th, 2017, the Investigative Service Unit at California State Prison-Sacramento of

22    the California Department of Corrections and Rehabilitation discovered a contraband cellphone

23    described as a **Huawei smart phone** in the assigned cell of inmate Ronald YANDELL and William

24    SYLVESTER.

25        15.    On February 28th, 2017, the Investigative Service Unit at California State Prison-

26    Sacramento of the California Department of Corrections and Rehabilitation discovered a contraband

27    cellphone described as a **white Posh phone** in the assigned cell of inmates Ronald YANDELL and

28    William SYLVESTER.

16.     On April 26th, 2016, the Investigative Service Unit at California State Prison-Sacramento of the California Department of Corrections and Rehabilitation discovered a contraband cellphone described as **a black Posh phone Model S240B with IMEI 353046070006271** in the assigned cell of inmates Ronald YANDELL and William SYLVESTER.

17.     On January 28th, 2016, the Investigative Service Unit at California State Prison-Sacramento of the California Department of Corrections and Rehabilitation discovered a contraband **flip phone Model Z222 with IMEI 866011024015588** in the assigned cell of inmates Ronald YANDELL and William SYLVESTER.

18.     On August 26, 2016 the Investigative Service Unit at California State Prison-Lancaster of the California Department of Corrections and Rehabilitation discovered a contraband cellphone **Posh (IMEI Number 354556070012854,354556070317857)** in the assigned cell of inmate Danny TROXELL. This cellphone was actually transferred to the Drug Enforcement Administration (DEA) Sacramento where it is currently booked.

19.     The Devices are currently in the lawful possession of the California State Prison - Sacramento's possession in the following way: seized as contraband property of inmates incarcerated with the California Department of Corrections and Rehabilitation. Therefore, while the Drug Enforcement Administration might already have the necessary authority to examine the devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the devices will comply with the Fourth Amendment and other applicable laws.

20.     As detailed in the affidavit in support of the criminal complaint, incorporated by reference, YANDELL, SYLVESTER, and TROXELL frequently used cell phones to communicate with their co-conspirators and others about their conspiracy to distribute narcotics, their conspiracies to commit violent crimes in aid of racketeering, and various other aspects of the operations and affairs of the Aryan Brotherhood enterprise. *See United States v. Yandell, et al.*, Case No. 2:19-cr-107, ECF No. 1 (May 21, 2019) (authorized by Magistrate Judge Delaney).

## V.     TRAINING AND EXPERIENCE REGARING USE OF TELEPHONES

21.     As discussed extensively in the affidavit in support of the criminal complaint, YANDELL, SYLVESTER, TROXELL, and their fellow Aryan Brotherhood members and associates

frequently used their contraband prison cell phones to discuss and operate the Aryan Brotherhood enterprise. They discussed a wide variety of criminal activity, including the affairs of the enterprise, murders, violent crimes, drug trafficking, and smuggling contraband into prison.

a) I am aware based on my training and experience that gang members use telephones to further their criminal activity. Specifically, I am aware from prior investigations and the investigation into the Aryan Brotherhood that gang members use their telephones to store contact information for other gang members and associates, to communicate with other gang members and associates via text message, telephone calls, and social media, and to photograph and video record themselves and other displaying gang hand signs and contraband.

b) I am aware based on my training and experience and knowledge of this investigation that Aryan Brotherhood gang members often report their crimes their fellow members. This reporting may be done through calls or messages, and therefore evidence of call logs, contacts, and messages may provide evidence of crimes committed by the Aryan Brotherhood members.

c) I am also aware that the stored content on the cellular phones possessed by Aryan Brotherhood gang members may reveal evidence of membership in the Aryan Brotherhood enterprise. This evidence includes communications with other gang members and images.

22. I am also aware from my training and experience that individuals engaged in drug trafficking will also often keep and store evidence of their crimes on their cell phones.

a) Drug traffickers at times use cell phones to take photos, videos, or audio files documenting their drug transactions or the contraband or proceeds. Digital media, such as photos, videos, or audio files, allow law enforcement to potentially discover co-conspirators in the crime or discover types, amounts and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

b) Drug traffickers at times use cellular phones for financial transactions related to drug trafficking activity. Financial data on cellular phones therefore allow law enforcement to

1    potentially discover co-conspirators in the crime or discover prices and dates of specific

2    drug transactions.

3    c)    Drug traffickers commonly use location services on cellular phones to store addresses

4         and navigate routes used in drug trafficking activity, such as addresses of locations where

5         drugs are stored, co-conspirator addresses, and locations of drug deals. Location

6         information on cellular phones allows law enforcement to discover information about

7         drug trafficking activity, such as the location of drugs, addresses and dates of drug

8         transactions, and names and addresses of co-conspirators.

9    d)    Drug traffickers commonly use internet browsers on cellular phones to access financial

10        information, communicate with co-conspirators, and facilitate drug trafficking activities.

11        Records of internet activity therefore allow law enforcement to discover information

12        about drug trafficking activity, such as types of drugs, dates of transactions, and names of

13        co-conspirators.

14    23.    I therefore believe the **Subject Devices** will contain evidence of violations of 21 U.S.C.

15    §§ 841(a)(1) (Distribution and Possession with Intent to Distribute Controlled Substances), 846

16    (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances), and 843(b) (Use

17    of a Communication Facility to Facilitate a Controlled Substance Offense); and 18 U.S.C. §§ 1962(d)

18    (Conspiracy to Engage in a Racketeer Influenced Corrupt Organization), and 1959(a) (Violent Crimes in

19    Aid of Racketeering).

20    **VI.    <u>CELL PHONES</u>**

21    24.    Based on my training, experience, and research, I know that the **Subject Devices** have

22    the capability of serving as a wireless telephone, digital camera, and PDA.  In my training and

23    experience, examining data stored on devices of this type can uncover, among other things, evidence

24    that reveals or suggests who possessed or used the device.

25    25.    Based on my training and experience, I use the following technical terms to convey the

26    following meanings:

27    a)    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a

28        handheld wireless device used for voice and data communication through radio signals.

These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of all calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading form the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b)    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c)    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and using computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDSs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents,

spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

## VII.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

27.    Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Devices** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because:

a)    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b)    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes is necessary to establish that a particular thing is not present on a storage medium.

28.    I know that when an individual uses an electronic device to coordinate narcotics trafficking, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

a)    <u>Nature of examination.</u> Based on the forging, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

b)    <u>Manner of execution.</u> Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VIII.    <u>CONCLUSION</u>

29.    On the basis of my participation in this investigation and the information summarized above, I have probable cause to believe that the **Subject Devices** maintains evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (Distribution and Possession with Intent to Distribute Controlled Substances), 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances), and 843(b) (Use of a Communication Facility to Facilitate a Controlled Substance Offense); and 18 U.S.C. §§ 1962(d) (Conspiracy to Engage in a Racketeer Influenced Corrupt

1   Organization), and 1959(a) (Violent Crimes in Aid of Racketeering).  The items listed in Attachment B

2   are evidence of these crimes, contraband, or fruits of these crimes, or property that is or has been used as

3   instrumentalities to commit the foregoing offenses.  Therefore, I respectfully request that a warrant be

4   issued that authorizes the search of the **Subject Devices** described in Attachment A and the seizure of

5   the electronically stored items listed in Attachment B.

Respectfully submitted,

/s/
_____
Brian Nehring
Drug Enforcement Administration

Subscribed and sworn to me
telephonically on this  16th  day of
June, 2023

_____
The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

_____
Approved as to form by AUSA ROSS PEARSON

## ATTACHMENT A

## DEVICES TO BE SEARCHED

The device to be searched are:

a)    ZTE cellphone

b)    LG cellphone

c)    Decwin mini cellphone

d)    Zanco mini phone

e)    Huawei smart phone

f)    white Posh phone

g)    black Posh phone Model S240B with IMEI 353046070006271

h)    Flip phone Model Z222 with IMEI 866011024015588

i)    Posh phone IMEI   354556070012854,354556070317857

**ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) (Distribution and Possession with Intent to Distribute Controlled Substances), 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances), and 843(b) (Use of a Communication Facility to Facilitate a Controlled Substance Offense); and 18 U.S.C. §§ 1962(d) (Conspiracy to Engage in a Racketeer Influenced Corrupt Organization), and 1959(a) (Violent Crimes in Aid of Racketeering) since January 2011 to Present, including:

      a.   Any records of incoming, outgoing calls, and missed call history for the time, which would include the number associated with the phone, last numbers dialed, last calls received, time of calls and duration of calls;

      b.   Any incoming and outgoing recorded messages and stored voicemail messages;

      c.   Any records of "contacts" stored in the telephone, such as stored names, telephone numbers, e-mail addresses, and other identifying contact information;

      d.   Any incoming, outgoing, or draft text messages;

      e.   Any photographs, video images, and audio clips;

      f.   Stored reminders, memos, notes, documents, and lists;

      g.   Data identifying the owner and/or user(s) of the telephone;

      h.   Any information regarding the location of the devices;

      i.   Social media applications and account information for those application

      j.   Passwords used to access the electronic data described above; and

      k.   Any records of appointments and/or reminders annotated on a calendar.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4.      This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in

addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | | |
| ZTE cellphone;  LG cellphone; Decwin mini cellphone; Zanco mini phone; Huawei smart phone; white Posh phone; black Posh phone Model S240B with IMEI 353046070006271; Flip phone Model Z222 with IMEI 866011024015588; Posh phone IMEI 354556070012854,354556070317857 | ) ) ) ) ) ) | Case No.    2:23-sw-0606 CKD |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ June 30, 2023 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      June 16, 2023 at 9:37 am                    *Judge's signature*

City and state:      Sacramento, California                    Carolyn K. Delaney, U.S. Magistrate Judge
                                                                                                *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____
Signature of Judge                                                    Date

## ATTACHMENT A

## DEVICES TO BE SEARCHED

The device to be searched are:

a)    ZTE cellphone

b)    LG cellphone

c)    Decwin mini cellphone

d)    Zanco mini phone

e)    Huawei smart phone

f)    white Posh phone

g)    black Posh phone Model S240B with IMEI 353046070006271

h)    Flip phone Model Z222 with IMEI 866011024015588

i)    Posh phone IMEI   354556070012854,354556070317857

## ATTACHMENT B

1.     All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) (Distribution and Possession with Intent to Distribute Controlled Substances), 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances), and 843(b) (Use of a Communication Facility to Facilitate a Controlled Substance Offense); and 18 U.S.C. §§ 1962(d) (Conspiracy to Engage in a Racketeer Influenced Corrupt Organization), and 1959(a) (Violent Crimes in Aid of Racketeering) since January 2011 to Present, including:

    a.    Any records of incoming, outgoing calls, and missed call history for the time, which would include the number associated with the phone, last numbers dialed, last calls received, time of calls and duration of calls;

    b.    Any incoming and outgoing recorded messages and stored voicemail messages;

    c.    Any records of "contacts" stored in the telephone, such as stored names, telephone numbers, e-mail addresses, and other identifying contact information;

    d.    Any incoming, outgoing, or draft text messages;

    e.    Any photographs, video images, and audio clips;

    f.    Stored reminders, memos, notes, documents, and lists;

    g.    Data identifying the owner and/or user(s) of the telephone;

    h.    Any information regarding the location of the devices;

    i.    Social media applications and account information for those application

    j.    Passwords used to access the electronic data described above; and

    k.    Any records of appointments and/or reminders annotated on a calendar.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4.     This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in

addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.